UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN S. FERGUSON,

        Plaintiff        Case No.

v.        HONORABLE:

LOUIS DEJOY, POSTMASTER GENERAL,
UNITED STATES POSTAL SERVICE,

        Defendant.

---

ALSPECTOR SOSIN & NOVECK, PLLC
ROBERT M. SOSIN (P35414)
DANIEL NOVECK (P28087)
Attorneys for Plaintiff
30100 Telegraph Road, Suite 360
Bingham Farms, MI  48025-5804
(248) 642-3200
robert@asnlaw.com
daniel@asnlaw.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the above-named Plaintiff, BRYAN FERGUSON ("Plaintiff"), by his attorneys, ALSPECTOR SOSIN & NOVECK, PLLC, and for his Complaint against the above-named Defendant, states as follows:

## COMPLAINT

1. Plaintiff is, and at all times pertinent herein has been, a resident of the City of Detroit, Wayne County, Michigan.

2. Plaintiff is informed and believes and therefore avers that Defendant LOUIS DEJOY, POSTMASTER GENERAL, is the appropriate party-defendant for this Federal-employee lawsuit against the UNITED STATES POSTAL SERVICE (hereafter alternately "Defendant" or the "Agency"), including pursuant to the Agency's August 10, 2020 "Notice of Final Action."

3. Plaintiff is, and at all times pertinent herein has been, employed by Defendant at its Livonia facility as an automotive lead mechanic.

4. This is an action to enforce civil rights, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e, et seq. (Title VII) and the Elliott-Larsen Civil Rights Act, MCL 37.2101, et seq. (ELCRA), arising out of Plaintiff's employment relationship with Defendant.

5. This Court has jurisdiction over the subject matter of this action pursuant to 42 USC §2000e-5 and 28 USC §1331 and §1343(4).

6. Plaintiff began his employment with Defendant in about 1999 and continues to be employed with Defendant through the date of this Complaint.

7. Throughout the course of Plaintiff's employment with Defendant, Plaintiff performed his job duties in a capable and competent manner.

8. In or about 2010, Plaintiff's co-worker, Paul Guevara ("Guevara"), filed an EEO claim for discrimination against Defendant.

9. Defendant's attorney asked Plaintiff to testify in the Guevara case, and even threatened Plaintiff with adverse consequences if he did not testify.

10. Plaintiff did in fact testify in the Guevara case, truthfully stating that he knew of no discrimination against Guevara.

11. Plaintiff is informed and believes and therefore avers that Guevara's case against Defendant ended unfavorably for Guevara.

12. Also around 2010, Defendant's attorney asked Plaintiff to testify in the EEO claim for discrimination brought by Plaintiff's co-worker, David Kea ("Kea").

13. Defendant's attorney made threats against Plaintiff if he were not to testify.

14. Plaintiff reluctantly agreed to testify in the Kea case and gave truthful testimony against Kea's claim.

15. Plaintiff is informed and believes and therefore avers that Kea's case against Defendant ended unfavorably for Kea.

16. Shortly after the unfavorable conclusion of the Guevara case against Defendant, Guevara began to threaten and harass Plaintiff, both verbally and physically, calling him names, making derogatory statements about him, challenging him to fight, even smashing into Plaintiff's car with a postal truck.

17. Guevara's threats against and harassment of Plaintiff has continued unfettered through the present.

18. Shortly after the unfavorable conclusion of the Kea case against Defendant, Kea began to threaten and harass Plaintiff, both verbally and physically, and actually came to Plaintiff's home for the purpose of intimidating and harassing Plaintiff.

19. Plaintiff faithfully reported to Defendant, both verbally and in writing, the inappropriate actions of Guevara and Kea.

20. Plaintiff repeatedly requested of Defendant to make Guevara and Kea stop their threats to and harassment of Plaintiff, to discipline Guevara and Kea for such inappropriate actions, and/or to transfer Guevara and Kea away from the Livonia facility and away from Plaintiff.

21. Despite Plaintiff's repeated requests, Plaintiff is informed and believes and therefore avers that Defendant did nothing to discourage the inappropriate actions of Guevara, did not discipline Guevara, did not transfer Guevara away from Plaintiff, and otherwise created and/or permitted a hostile work environment to exist against Plaintiff.

22. Despite Plaintiff's repeated requests, Plaintiff is informed and believes and therefore avers that Defendant did nothing to discourage the inappropriate actions

4

of Kea, did not transfer Kea away from Plaintiff, and otherwise created and/or permitted a hostile work environment to exist against Plaintiff.

23. Plaintiff's testimony in the Guevara and Kea EEO cases against Defendant, and Plaintiff's complaints to Defendant about the inappropriate actions of Guevara and Kea in retaliation for his testimony in their respective EEO cases, are collectively hereafter referred to as Plaintiff's "Protected Activities."

24. Since about 2015, Defendant has, through its agents, employees and representatives, including supervisor Henry Battle, commenced a campaign of harassment and mistreatment against Plaintiff, made the work environment uncomfortable and hostile for Plaintiff, and otherwise treated Plaintiff as if he were the problem instead of Guevara and Kea, all in retaliation for Plaintiff's Protected Activities.

25. Defendant, through its agents, employees and representatives, including Henry Battle, have since 2010 wrongfully and without justification retaliated against Plaintiff for complaining about Guevara and Kea, all in retaliation for Plaintiff's Protected Activities.

26. Such retaliation for Plaintiff's Protected Activities violates both Title VII and the ELCRA which prohibit retaliation for participating in an EEO process or reasonably opposing conduct made unlawful by an EEO law.

27. Defendant, through its agents, employees and representatives, including Henry Battle, have since 2010 wrongfully and without justification allowed, encouraged and/or condoned the abusive and harassing behavior of Guevara and Kea toward Plaintiff, and otherwise have created and/or permitted a hostile work environment to exist against Plaintiff.

28. Plaintiff timely filed an EEO charge of retaliation with the Agency and the Equal Employment Opportunity Commission (EEOC), and he commences this lawsuit within ninety (90) days of receiving notice of his rights pursuant to the Agency's August 10, 2020 "Notice of Final Action."

29. At all times pertinent to this action, Defendant and its agents, servants and employees owed Plaintiff the duty to observe the statutes of the United States and the State of Michigan, including Title VII and ELCRA, all applicable local ordinances, the common law and the contractual obligations and undertakings of the parties, Plaintiff having fully performed all things by him to be performed.

30. However, Defendant and its agents, servants and employees breached and disregarded their duties owed to Plaintiff in various ways and manners including but not limited to those set forth above, and by retaliating against Plaintiff for complaining about Guevara and Kea; by refusing to stop Guevara and Kea from harassing and mistreating Plaintiff; by making the work environment uncomfortable and hostile for Plaintiff; by placing Plaintiff in physical danger by

forcing him to work with Guevara and Kea; by treating Plaintiff as if he were the problem instead of Guevara and Kea; by treating Plaintiff differently (worse) than similarly-situated employees who had not engaged in the Protected Activities; by discriminating against Plaintiff with respect to his employment, terms of employment, and conditions of employment because of his Protected Activities; by harassing and treating Plaintiff unfairly because of his Protected Activities; and by otherwise failing to adhere to Defendant's legal and contractual duties owed to Plaintiff.

31. As a direct, natural and proximate result of the aforedescribed acts of Defendant and its agents, servants and employees, Plaintiff was caused to suffer serious injuries, losses and damages and likely will be caused to so suffer in the future; and Plaintiff has suffered, and likely will suffer in the future, great embarrassment, humiliation, mortification, mental anguish, mental and emotional suffering, anxiety, worry and discomfort; and Plaintiff has been deprived of, and in the future likely will be deprived of, many of the pleasures and comforts of life; and Plaintiff has suffered loss and impairment of his reputation and he has suffered loss of earnings and earning ability and capacity as a result of the wrongful acts and omissions of Defendant herein, and he may so suffer such losses and impairments in the future; and Plaintiff has expended and incurred, and in the future likely will so expend and incur, substantial sums of money and time on

attorney fees and costs in an effort to enforce his rights pursuant to the Title VII and/or ELCRA; and Plaintiff otherwise has suffered and likely will so suffer in the future great injuries and damages as a result of such wrongful conduct by Defendant herein.

WHEREFORE, Plaintiff asks judgment against Defendant in a sum in excess of $250,000.00 sufficient to compensate Plaintiff for his significant injuries and damages, plus an award of interest, costs and attorney fees, and attorney fees and costs pursuant to Title VII and/or ELCRA.

Respectfully submitted,

ALSPECTOR, SOSIN & NOVECK, PLLC

Dated: August 28, 2020

By: /s/ Robert M. Sosin
ROBERT M. SOSIN P35414
DANIEL NOVECK P28087
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

NOW COMES the above-named Plaintiff, by his attorneys, ALSPECTOR, SOSIN & NOVECK, PLLC, and hereby demands a trial by jury in the above-entitled action.

Respectfully submitted,

ALSPECTOR, SOSIN & NOVECK, PLLC

Dated: August 28, 2020

By: /s/ Robert M. Sosin
ROBERT M. SOSIN P35414
DANIEL NOVECK P28087
Attorneys for Plaintiff