UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BRYAN S. FERGUSON, | |
| Plaintiff, | Case No. 20-cv-12351 |
| | Honorable Robert H. Cleland |
| | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| LOUIS DEJOY, *et al.*, | |
| Defendants. | |

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (ECF NO. 26)**

## I.    Introduction

Defendants Louis DeJoy and the United States Postal Service move for summary judgment on Plaintiff Bryan S. Ferguson's coworker and supervisor retaliation claims.  ECF No. 26.  The Honorable Robert H. Cleland referred the motion to the undersigned under 28 U.S.C. § 636(b)(1)(B).  ECF No. 30.  After reviewing the record, the Court **RECOMMENDS** that defendants' motion be **GRANTED**.

## II.    Background

Ferguson worked as a Postal Service mechanic from 1999 to 2021. ECF No. 26-2, PageID.151, 156; ECF No. 28-1, PageID.421.  In 2006,

Ferguson transferred to the Livonia vehicle maintenance facility (VMF), where Paul Guevara also worked as a mechanic.  ECF No. 26-2, PageID.156-157, 184, 201; ECF No. 26-3, PageID.281.  Ferguson and Guevara had an acrimonious relationship, with each repeatedly accusing the other of harassment from 2008 through 2021.  *See, e.g.*, ECF No. 26-2, PageID.203-205, 219-220; ECF No. 26-3, PageID.284, 286-290.  Ferguson also conflicted with David Kea, a vehicle operation maintenance assistant at the Plymouth, Michigan, post office.  ECF No. 26-2, PageID.145; ECF No. 26-9, PageID.350; ECF No. 26-10, PageID.352; ECF No. 26-11, PageID.357; ECF No. 26-12, PageID.358.

Ferguson reported each alleged altercation with Guevara to Henry Battle after Battle became his manager in April 2016.  ECF No. 26-2, PageID.222-225; ECF No. 26-4, PageID.323.  Ferguson claimed that Battle did nothing to stop Guevara's harassment and instead began to bully him too.  ECF No. 26-2, PageID.222-227, 252-253, 268-269.  Yet Ferguson admitted that Battle offered to transfer him to a different VMF or change his start time to avoid seeing Guevara.  *Id.* at PageID.232, 241, 261-262; ECF No. 26-4, PageID.323-324.  Ferguson refused those moves, arguing that he was not at fault and that Battle made these proposals to bully him.  ECF No. 26-2, PageID.195, 234-237, 239, 241; ECF No. 26-4, PageID.323-324.

Guevara filed an EEO complaint and federal lawsuit alleging that Ferguson and others harassed and retaliated against him because of his age and national origin.  ECF No. 26-6, PageID.326-330; ECF No. 26-7, PageID.331-347.  Kea later filed an EEO complaint and federal lawsuit alleging harassment and discrimination by Ferguson and others.  ECF No. 26-12, PageID.358-360; ECF No. 26-13, PageID.361-372.  Ferguson testified in Guevara's and Kea's EEO cases in June 2010 and July 2011, respectively, that he was unaware of discrimination against either coworker.  ECF No. 26-2, PageID.145, 243-246.

In May 2014, Ferguson filed his own EEO complaint alleging that management failed to address Guevara's harassment.  *Id.* at PageID.266. Ferguson later withdrew that complaint.  *Id.* at PageID.267.  In February 2017, he filed a second EEO complaint alleging that he was denied a promotion based on his prior EEO activity.  ECF No. 26-18, PageID.406-407.  Ferguson withdrew that complaint after accepting a settlement offer of a supervisory position at the Detroit VMF.  ECF No. 26-19, PageID.409-410.  But Ferguson returned to his old position at Livonia VMF after spending one day in the new position.  ECF No. 26-2, PageID.152-155.  In December 2017, Ferguson filed a third EEO complaint alleging that Battle and another supervisor failed to address Guevara's harassment and

3

retaliated against Ferguson for his prior EEO activity.  *Id.* at PageID.267;

ECF No. 26-20, PageID.411.  Ferguson contends that Battle began to

harass and retaliate against him after he filed that complaint.  ECF No. 26-

2, PageID.254-256, 259-260; ECF No. 28-7, PageID.469.

Ferguson claims retaliation in violation of Title VII of the Civil Rights

Act of 1964.[1]  ECF No. 1, PageID.5-6.  For his claim of coworker retaliation,

he alleges that defendants allowed, encouraged, and condoned Guevara's

harassment.[2]  *Id.*  He also asserts supervisor retaliation based on Battle's

alleged harassment.  *Id.*  Defendants move for summary judgment, arguing

that Ferguson cannot establish the prima facie elements of either claim.

ECF No. 26, PageID.128-139.

---

[1] Ferguson stipulated to dismiss his claim under Michigan's Elliott-Larsen Civil Rights Act.  ECF No. 7.

[2] Ferguson's complaint also alleged that defendants allowed, encouraged, and condoned Kea's harassment.  ECF No. 1, PageID.6.  But defendants' motion says that Ferguson's remaining coworker retaliation claim relates to Guevara only.  ECF No. 26, PageID.128.  In his response brief, Ferguson alludes to harassment by Kea, but the only evidence he cites is Ferguson's testimony that Kea said one time, "[Y]ou don't know who you effing with" and "I could get you."  ECF No. 28-1, PageID.427.  Ferguson cites no evidence that Battle or other management were aware of that statement, and Ferguson must show defendants' awareness for them to be held liable for Kea's alleged harassment.  *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345-46 (6th Cir. 2008).

4

### III.    Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Id.* at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The opposing party "may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an

5

affirmative showing with proper evidence in order to defeat the motion."
*Alexander v. Caresource*, 576 F.3d 551, 558 (6th Cir. 2009) (internal
quotation marks omitted).  "[T]he failure to present any evidence to counter
a well-supported motion for summary judgment alone is grounds for
granting the motion."  *Id.* (internal quotation marks omitted).  "Conclusory
statements unadorned with supporting facts are insufficient to establish a
factual dispute that will defeat summary judgment."  *Id.* at 560.

Viewing the evidence in the light most favorable to Ferguson, the
Court finds that defendants are entitled to summary judgment.

**B.**

Ferguson seeks to hold defendants liable for allowing, encouraging,
and condoning Guevara's retaliatory harassment.  Under Title VII, it is
unlawful for an employer to retaliate against an employee who engages in
protected activity, including making a charge of discrimination or testifying
in an investigation about an alleged discriminatory practice.  42 U.S.C.
§ 2000e-3(a); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir.
2000).  In the Sixth Circuit, "Title VII protects against coworker retaliatory
harassment that is known to but not restrained by the employer."  *Hawkins
v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345-46 (6th Cir. 2008).  Ferguson
alleges that he engaged in protected activity when he testified in Guevara's

6

and Kea's EEO cases, filed his own EEO complaints, and reported

Guevara's alleged harassment to management.  ECF No. 1, PageID.5;

ECF No. 28-1, PageID.422, 428, 432.  Defendants concede that testifying

in and filing an EEO case constitute protected activity.  ECF No. 26,

PageID.130.  But they allege that Ferguson cannot show that defendants

are liable for Guevara's alleged retaliation.

An employer is liable for a coworker's actions if three conditions are

met:

> (1) the coworker's retaliatory conduct is sufficiently severe so
> as to dissuade a reasonable worker from making or supporting
> a charge of discrimination, (2) supervisors or members of
> management have actual or constructive knowledge of the
> coworker's retaliatory behavior, and (3) supervisors or
> members of management have condoned, tolerated, or
> encouraged the acts of retaliation, or have responded to the
> plaintiff's complaints so inadequately that the response
> manifests indifference or unreasonableness under the
> circumstances.

*Hawkins*, 517 F.3d at 347.

Defendants maintain that Ferguson cannot show that Guevara's

alleged harassment was retaliatory or that defendants responded

unreasonably to Ferguson's complaints.  ECF No. 26, PageID.130-132,

134-135.  Because these two arguments are dispositive of Ferguson's

claim, the Court does not address defendants' other arguments that the

alleged harassment was not sufficiently severe or that Ferguson failed to exhaust administrative remedies.  *See id.* at PageID.132-134, 139-140.

### 1.

Defendants contend that Ferguson cannot establish that Guevara's harassment was retaliatory because the hostility began before Ferguson's EEO testimony.  ECF No. 26, PageID.130-132.

To sustain a retaliation claim, "the conduct at issue must be *retaliatory* conduct, not merely uncivil or even abusive behavior by itself. Thus, the plaintiff must have produced some evidence that the complained-of actions were motivated by the exercise of his protected right."  *Perkins v. Harvey*, 368 F. App'x 640, 647-48 (6th Cir. 2010).  Title VII was not intended to function as a "general civility code."  *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 352 (6th Cir. 2005) (internal citation and quotation marks omitted).  Thus, harassment premised on personal conflict does not equate to retaliation for protected activities.  *Perkins*, 368 F. App'x at 648.  Evidence that harassment began before a plaintiff's protected activity undermines his claim that the harassment was retaliatory.  *See id.*; *Haughton v. Brennan*, No. 3:15-cv-00888, 2016 WL 4216778, at *7 (D. Or. Aug. 8, 2016); *Morgan v. Shelby Cnty. Gov't*, No. 05-2541, 2007 WL 9757507, at *18 (W.D. Tenn. Apr. 26, 2007).

Hostility between Ferguson and Guevara began in 2008, before Ferguson's June 2010 testimony in Guevara's EEO case.  When Ferguson transferred to the Livonia VMF in 2006, Guevara first tried to befriend him, but Ferguson was not receptive.  ECF No. 26-2, PageID.184-186. According to Ferguson, Guevara began making false accusations against him in summer 2008, when Guevara claimed he stole an instruction manual and hid the remote for the television in the breakroom.  *Id.* at PageID.203-204.  In August and September 2009, Guevara accused Ferguson of turning off the air conditioning in the breakroom and tying two chairs together to trip him.  *Id.* at PageID.204-206; ECF No. 26-3, PageID.288-289.  In summer 2009, Ferguson requested to take his lunch break at a different time to avoid Guevara's bullying.  ECF No. 26-2, PageID.248-249. In early 2010, Guevara accused Ferguson of sending out vehicles that were unsafe to drive.  *Id.* at PageID.192-193.  And in May 2010, Guevara reported that Ferguson repeatedly called him a "dumb motherfucker."  *Id.* at PageID.187-188; ECF No. 26-5, PageID.325.

The hostilities continued after Ferguson's June 2010 EEO testimony. In July 2010, Ferguson reported that Guevara often blocked him from going into the breakroom or restroom.  ECF No. 28-6, PageID.465.  He also reported that Guevara parked a car so close to his that he was unable to

9

use his passenger door.  *Id.*  And in May 2014, Ferguson reported that

Guevara "gave me a look and hunched his shoulders as if he was going to

lunge at me to hit me."  *Id.* at PageID.466; *see also* ECF No. 26-2,

PageID.211 (claiming that Guevara would ball his fists and lunge at him).

In January 2015, Ferguson claimed that Guevara approached his truck and

tried to open the driver-side door "in a threatening manner."  ECF No. 28-6,

PageID.467.  In December 2016 and December 2017, Ferguson claimed

that Guevara threatened to "beat [his] fucking ass."  ECF No. 28-5,

PageID.460-461.  Ferguson reported that Guevara blocked his way into the

workplace and made more threats of violence in January and February

2018.  *Id.* at PageID.462.  And although Ferguson did not specify a date,

he also reported that Guevara backed a truck into his car, damaging the

front end.  ECF No. 26-2, PageID.212-213; ECF No. 26-3, PageID.305-306

(Guevara claiming the incident was "purely accidental").

Guevara also reported altercations with Ferguson, though he

provided no dates for the events.  Guevara stated that Ferguson "flip[ped]

[him] off all the time," made insulting remarks toward him, invited him to

fight, and broke the antenna on his car.  ECF No. 26-3, PageID.286-290,

293.  He also claimed that Ferguson sabotaged his work, destroyed his

notes, and hid his tools.  *Id.* at PageID.291-292.  In February 2020,

10

Guevara claimed that Ferguson exposed his genitals to Guevara and asked, "How do you like that?"  *Id.* at PageID.289-290; ECF No. 26-2, PageID.219-220; ECF No. 26-16, PageID.400.  Ferguson then allegedly put his finger in his nose, pulled it out, and put it in his mouth, while smacking his lips.  *Id.*  Ferguson denied that this encounter took place.  ECF No. 26-2, PageID.219-220.

During his deposition, Ferguson insisted that Guevara became hostile toward him after he provided EEO testimony and claimed that the incidents Guevara accused him of before June 2010 never happened.  *Id.* at PageID.187-188; ECF No. 28-2, PageID.440.  But even accepting Ferguson's allegation that Guevara's accusations were false, the fact that Guevara made them shows that their relationship was hostile.  And Ferguson admitted that he asked to change his lunch break in 2009 to avoid Guevara's bullying.  ECF No. 26-2, PageID.248-249.  Ferguson's conclusory statement that Guevara became hostile only after Ferguson's 2010 deposition is contradicted by his own testimony and cannot establish a factual dispute.  *Alexander*, 576 F.3d at 560.

Nor does the evidence show that Guevara's alleged harassment escalated after Ferguson's EEO testimony.  Before June 2010, Guevara's alleged harassment included false accusations, bullying, offensive

language, and physically blocking Ferguson from going into the breakroom.
ECF No. 26-2, PageID.187-188, 192-193, 203-206, 248-249; ECF No. 28-
6, PageID.465.  Afterwards, the harassment included more false
accusations, a threatening demeanor, verbal threats, and property damage.
ECF No. 26-2, PageID.212-213; ECF No. 28-5, PageID.460-462; ECF No.
28-6, PageID.465-467.  Ferguson admitted that Guevara has never
physically injured him or touched him in a hostile manner.  ECF No. 26-2,
PageID.210-212, 218.  And Battle confirmed that Ferguson's complaints
since 2016 have involved the way Guevara looked at him, non-verbal
posturing, hissing noises, blocking access to the time clock, and name-
calling.  ECF No. 26-15, PageID.384, 389-390.  Thus, Guevara's
harassment before and after Ferguson's EEO testimony was similar.

The evidence shows that Guevara's harassment stemmed from a
personality conflict rather than retaliation for Ferguson's EEO testimony.
Thus, Ferguson fails to show that Guevara harassment was retaliatory.
*See Perkins*, 368 F. App'x at 648 (finding hostility was not retaliatory when
it resulted from a personality conflict and antagonism predating the
protected activity).

**2.**

Addressing the third element of a prima facie case, defendants contend that Ferguson cannot establish that they responded unreasonably to his complaints of harassment.  ECF No. 26, PageID.134.

The third element requires a plaintiff to show that defendants "condoned, tolerated, or encouraged the acts of retaliation," or inadequately responded to the plaintiff's complaints.  *Hawkins*, 517 F.3d at 347.  An employer's response to complaints of retaliation "is unreasonable if it manifests indifference or unreasonableness in light of the facts the employer knew or should have known."  *Id.* at 340 (internal quotation marks omitted).  But a response is adequate "if it is reasonably calculated to end the harassment."  *Id.* (internal quotation marks omitted).

Ferguson has presented no evidence or argument showing that defendants condoned, tolerated, or encouraged Guevara's alleged harassment.  *See generally* ECF No. 28-1.  Instead, he argues that defendants responded unreasonably because they failed to stop the harassment.  *Id.* at PageID.422-423.  The evidence shows that defendants made reasonable efforts to stop the conflict between Ferguson and Guevara.

13

It is undisputed that when Ferguson reported Guevara's alleged harassment, Battle questioned him about the incidents.  ECF No. 26-2, PageID.208, 224-226; ECF No. 26-4, PageID.323; ECF No. 26-15, PageID.385.  Ferguson did not know whether Battle spoke to Guevara but assumed that Guevara denied the allegations.  ECF No. 26-2, PageID.225. Because Guevara denied the claims and because there were typically no witnesses, Battle says he was unable to determine whether Ferguson's complaints were true.  ECF No. 26-4, PageID.323; ECF No. 26-15, PageID.385, 393-394.  While Ferguson agreed there were typically no witnesses to the incidents, he believed that, because of his good reputation, Battle should have found him more credible than Guevara.  ECF No. 26-2, PageID.207-208, 226-227.

Ferguson claims that defendants and Battle did nothing to stop Guevara's harassment.  *Id.* at PageID.222-227, 252-253, 268-269.  But Battle instructed Ferguson and Guevara "numerous times" not to have contact with each other.  *Id.* at PageID.229-231; ECF No. 26-4, PageID.323; ECF No. 26-3, PageID.306-307.  The parties also agree that Battle offered several solutions, such as transferring Ferguson to a different VMF or changing his start time by one hour so that he could avoid seeing Guevara at the time clock, where their confrontations typically occurred.

14

ECF No. 26-2, PageID.232, 241, 262; ECF No. 26-4, PageID.323-324; ECF No. 26-15, PageID.387-388.  Battle's supervisor Jim Hinman also offered to transfer Ferguson to another VMF.  ECF No. 26-2, PageID.261-262.  Ferguson refused both suggestions, arguing that he liked his workstation, that he was not at fault, and that he should not be punished. *Id.* at PageID.195, 234-236, 241; ECF No. 26-4, PageID.323-324. Ferguson instead thought that Guevara should have been moved to a different VMF.  ECF No. 26-2, PageID.238.

Defendants also offered Guevara opportunities to transfer to another VMF.  ECF No. 26-4, PageID.324; ECF No. 26-15, PageID.387-388.  Like Ferguson, Guevara refused the transfer because he said he was not at fault.  ECF No. 26-3, PageID.304-305; ECF No. 26-4, PageID.324; ECF No. 26-15, PageID.388.  And a collective bargaining agreement limits the Postal Service's ability to move a bargaining unit employee's duty station over the employee's objection.  ECF No. 26-17, PageID.403-404.  The Postal Service may move an employee as formal discipline but may not do so because two employees do not get along.  *Id.*  Ferguson agreed that the Postal Service cannot involuntarily transfer a mechanic to another VMF location.  ECF No. 26-2, PageID.168.

15

Defendants also distributed a zero-tolerance policy that directed employees to report harassment to their supervisors.  *Id.* at PageID.264-265.  And Postal Service supervisors gave "service talks" about discrimination, harassment, and the zero-tolerance policy after incidents took place.  *Id.* at PageID.265.  A "couple times," a union steward tried to mediate the conflict between Ferguson and Guevara, but Ferguson refused to participate.  *Id.* at PageID.250-252.

These measures—including investigating the allegations, distributing a harassment policy, trying to mediate, and offering transfers—were adequate.  *See Hairston v. Dep't of Veterans Affairs*, No. 1:15-CV-660, 2015 WL 9304558, at *6 (W.D. Mich. Dec. 21, 2015) (similar measures held to be reasonable).  The undisputed evidence shows that defendants offered solutions that were reasonably calculated to separate Ferguson and Guevara and to end the alleged harassment.  Ferguson has offered no argument or evidence showing that these measures were inadequate.  Ferguson's refusal to transfer because he was not the aggressor carries no weight.  By his own admission, the Livonia and Detroit VMFs are the same distance from his house, involved the same job duties, and are equally

16

desirable.[3]  ECF No. 26-2, PageID.161, 247-248.  While Ferguson insisted

that Guevara should have been transferred, he acknowledged that

defendants were unable to involuntarily transfer Guevara without formally

disciplining him.  But given Guevara's denial of the accusations and the

lack of witnesses, Battle was unable to determine that Guevara was at

fault.  Thus, summary judgment is proper.

## C.

Ferguson also asserts a retaliation claim based on alleged

harassment by Battle.[4]  To state a prima facie case of supervisor

retaliation, a plaintiff must prove four factors: (1) he engaged in activity

protected by Title VII; (2) this exercise of protected rights was known to his

employer; (3) the employer thereafter took adverse employment action

against him, or a supervisor subjected him to severe or pervasive

retaliatory harassment; and (4) there was a causal connection between the

---

[3] The Detroit VMF was perhaps more desirable because defendants promoted Ferguson to a supervisory position.  ECF No. 26-19, PageID.409-410.  After one day, Ferguson asked to return to his old position at the Livonia VMF, explaining that the supervisory position was "not for him" and conflicted with an offer to become a civilian police commissioner.  ECF No. 26-2, PageID.152-155.

[4] Although Ferguson argues in his response that "Mr. Battle and other supervisors blamed, and harassed and threatened Plaintiff," he cites no evidence of harassment by any supervisor other than Battle.  *See* ECF No. 28-1, PageID.433.

protected activity and the adverse employment action or harassment.

*Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Defendants first argue that Ferguson cannot prove a causal

connection because Battle's alleged harassment began before he learned

about Ferguson's protected activities.  ECF No. 26, PageID.135-136; ECF

No. 29, PageID.477-478.  Second, they argue that Battle's alleged

harassment was not severe or pervasive.  ECF No. 26, PageID.137-138.

The Court addresses these arguments in turn.

### 1.

Defendants maintain that Ferguson cannot show that Battle's alleged

harassment was retaliatory because Battle stated that he was unaware of

Ferguson's "EEO activity prior to being informed that [he] filed an EEO

complaint in December 2017."  ECF No. 26-4, PageID.324; *see also* ECF

No. 26-15, PageID.394 (stating that he heard rumors about Guevara's

lawsuit against the Postal Service and Ferguson but did not know the

details).  Although Ferguson does not directly address this issue in his

response, he attached a purported EEO affidavit stating that Battle was

informed about his testimony in Guevara's EEO case when he joined the

Livonia VMF in 2016 and that they discussed it.  ECF No. 28-5,

PageID.460.  Because the purported affidavit is unsigned and unsworn, it is

18

not competent summary judgment evidence under Rule 56(4)(c).  *Worthy v. Mich. Bell Tel. Co.*, 472 F. App'x 342, 344 (6th Cir. 2012).  Besides, Ferguson claims that Battle "started" harassing him because of his December 2017 EEO claim, so Ferguson's earlier protected activity is not relevant.  ECF No. 28-2*,* PageID.445; ECF No. 26-2, PageID.254.

And despite Ferguson's claim that Battle started harassing him after the December 2017 EEO claim, his testimony described Battle as harassing him before that claim.  Ferguson stated that Battle began condoning Guevara's behavior in early 2016.  ECF No. 26-2, PageID.252-253.  Ferguson also considered Battle's proposals to change his start time and transfer him to another VMF to be harassment.  *Id.* at PageID.235-237, 239, 241; ECF No. 26-4, PageID.323-324.

When answering questions about the period before he filed his December 2017 EEO complaint, Ferguson testified that he began writing complaints against Guevara.  ECF No. 28-2, PageID.444.  In response to his written complaints, Battle was "combative" and "bullying" and retaliated against Ferguson.  *Id.* at PageID.443-444.  Ferguson testified that Battle told Ferguson that he and Guevara acted "like a bunch of bitches," a

statement Ferguson considered harassing.[5]  ECF No. 26-2, PageID.253-254; ECF No. 28-2, PageID.444; ECF No. 28-5, PageID.461.  Ferguson testified that this statement prompted him to file his EEO complaint.  He said, "[T]he last time is when he said we act like a bunch of bitches.  When he said that that day, that's when I filed my EEO.  That day."  ECF No. 28-2, PageID.444.

Ferguson's testimony about Battle's conduct after he filed the EEO complaint is not materially different from the allegations of Battle's pre-complaint conduct.[6]  Ferguson stated that Battle would "[c]ome in my face and whisper stuff to me, like, you don't know who you're fucking with; I'll make life miserable for you."  *Id.* at PageID.445.  Battle allegedly scrutinized Ferguson's work more closely, though he never disciplined Ferguson.  ECF No. 26-2, PageID.259-260.  Battle also allegedly tried to move Ferguson's locker next to Guevara's.  *Id.* at PageID.255-259.

---

[5] Although Battle claims that he said Ferguson and Guevara acted like "babies," the Court construes the facts in the light most favorable to Ferguson.  *See* ECF No. 26-15, PageID.387.

[6] In a written summary, Ferguson describes Battle's alleged harassment between February and April 2018, which included increased scrutiny, threats of discipline, dirty looks, and making derogatory statements.  ECF No. 28-7, PageID.469-471.  The summary is unsigned and unsworn, and is therefore not competent summary judgment evidence.  Rule 56(c)(4); *Worthy*, 472 F. App'x at 344.

Ferguson objected and used a locker further from Guevara's—with no pushback from Battle. *Id.* Finally, Ferguson claimed that Battle moved his work bay closer to Guevara's.[7] *Id.* at PageID.158, 255-256. Battle admitted that he moved Ferguson from a secluded bay toward the back of the VMF to a bay that was more visible from the manager's office to discourage any harassment. ECF No. 26-4, PageID.324.

The Court recognizes that a plaintiff's testimony may create an issue of fact even if he testified inconsistently on factual claims. *See Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010). But Ferguson's conclusory claim that Battle's harassment "started" after he filed his December 2017 EEO complaint is belied by the facts to which he testified and does not support the finding of a factual dispute. *See Alexander*, 576 F.3d at 560. Ferguson's described Battle as engaging in retaliation, bullying, and harassment before Ferguson made his December 2017 complaint and he testified that Battle's bullying was what prompted him to file his EEO claim. So Ferguson cannot prove that Battle's conduct was retaliatory, and summary judgment on Ferguson's supervisor retaliation claim is proper.

---

[7] Ferguson admitted that Guevara does not have a bay but stated that he was "in and out" of the VMF all day. ECF No. 26-2, PageID.199, 256.

**2.**

Defendants next argue that Ferguson cannot show that Battle's alleged harassment was severe or pervasive enough.  ECF No. 26, PageID.137-138.

The standard for "severe or pervasive" harassment is the same in the retaliation context as it is in the discrimination context.  *Akers v. Alvey*, 338 F.3d 491, 498 (6th Cir. 2003).  "Under this standard, the harassment must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "This test has both an objective and a subjective component: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as hostile or abusive."  *Broska v. Henderson*, 70 F. App'x 262, 269 (6th Cir. 2003).  The Sixth Circuit has offered the following guidance:

> The determination of whether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment is not susceptible to a mathematically precise test.  Conduct that is merely offensive is not actionable.  To be actionable, the harassment must consist of more than words that simply have [offensive] connotations.  Instead, the workplace must be permeated with discriminatory intimidation, ridicule or insult sufficiently severe or pervasive to alter the conditions of employment.  A nonexhaustive list of factors for the court to consider include the frequency of the discriminatory conduct; its

22

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Hawkins*, 517 F.3d at 333 (internal quotation marks and citations omitted).

Ferguson makes many generic allegations that Battle was "combative" and "bullying."  The more specific allegations do not meet the standard.  Battle's allegedly offensive comments, including that Ferguson and Guevara acted "like a bunch of bitches," cannot support a finding that the harassment was severe or pervasive.  "[T]he ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing," as well as "offhand comments, and isolated incidents (unless extremely serious)" do not show that a workplace environment is abusive.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017) ("[O]ccasional offensive utterances do not rise to the level required to create a hostile work environment because, [t]o hold otherwise would risk changing Title VII into a code of workplace civility." (internal quotation marks omitted)).

Although Ferguson claims that Battle scrutinized and criticized his work, this fails to show severe or pervasive harassment.  *See Willey v. Slater*, 20 F. App'x 404, 405 (6th Cir. 2001) (a plaintiff's claims that

23

supervisors ignored him, treated him in an openly hostile or derogatory manner, and more closely scrutinized his work did not show severe or pervasive hostility); *Kabakova v. Office of Architect of Capitol*, No. 19-1276, 2020 WL 1866003, at *17 (D.D.C. Apr. 14, 2020) ("Courts have frequently dismissed hostile work environment claims centered on similar allegations of conflict with a manager, occasional denial of privileges, minor changes to work duties, and close scrutiny.").  So too is Ferguson's allegation that Battle threatened to discipline him.  *See Diamond v. U.S. Postal Serv.*, 29 F. App'x 207, 213, (6th Cir. 2002) (supervisors' unjustifiable threats to discipline employee were not severe or pervasive).

Although Ferguson claims that Battle harassed him by trying to change his start time and workplace, no such changes were made.  And while Battle allegedly sought to move Ferguson's locker next to Guevara's, he acquiesced when Ferguson moved it elsewhere.  Finally, Ferguson cannot show that moving his bay amounted to severe or pervasive harassment, as he has not rebutted Battle's explanation that any harassment at that bay would be more visible from the manager's office.

Because Ferguson cannot show severe or pervasive harassment, summary judgment is warranted.

24

## IV.    Conclusion

The Court thus **RECOMMENDS** that defendants' motion for summary

judgment be **GRANTED** (ECF No. 26).


s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge


Dated: July 18, 2022


## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's

findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2).  If a party fails to timely file specific objections, any further appeal

is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And

only the specific objections to this report and recommendation are

preserved for appeal; all other objections are waived.  *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains.  Within 14 days after service of

25

objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 18, 2022.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager